Ealer vs. Millspaugh et al.

## No. 1070.

CHARLES N. EALER, PRESIDENT, ET AL. VS. ABRAHAM MILLSPAUGH ET AL.

A public officer, to whom the law prescribes a specific mode of payment of the official monies in his hands, is not allowed to account for the same by any other disposition and in any other mode of payment than as specifically provided for by law.

APPEAL from the Thirteenth Judicial District Court, parish of St. Landry. *Hudspeth*, J.

John N. Ogden and Kenneth Baillio for Plaintiffs and Appellees :

The best evidence, in all cases, must be produced.

The Treasurer of a local Board of School Directors for the years 1870 and 1871 could only disburse the funds confided to him upon the written official warrant of the President of the Board; and then only for the debts of the ward to which the funds were apportioned. Sec. 23 of Act No. 6, extra session of 1870, and par. 10 of said act.

The funds apportioned to one ward cannot be applied to the payments of the debts of another ward.

Secondary evidence is inadmissible until the absence of better be accounted for. Thus : he, who has lost his titles, without being able to show their loss or an overpowering force, cannot establish their existence and contents by parol. 6 N. S. 208-266 ; 8 N. S. 288 ; 4 R. 95 ; 5 R. 163 ; 5 A. 690.

Lewis & Bro. for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The board of school directors of the town of Washington claim from the defendant, Millspaugh, as treasurer of said board, and from Elbert Gantt, his surety, the sum of fourteen hundred and twenty-nine dollars and fifty-six cents ($1429 56), received by him in that capacity from the State Treasurer for the use of the public schools of that town.

The answer of Millspaugh does not deny the receipt of the money, but avers that it was paid out by him " strictly in accordance with the requirements of the law."

The answer of the surety denies any indebtedness.

The evidence shows that the money was received by Millspaugh, and that warrants were drawn by the president of the board on the treasurer against it, amounting to eight hundred and sixty dollars, which were paid by him. On the trial the warrants so paid were not produced, but the non-production was sufficiently accounted for. The defendant

says that he placed them in the drawer in which he habitually kept his vouchers, and that some time afterward he found that all the papers so put aside had been destroyed by rats. He further states that it was customary with him, on paying such warrants, to indorse them as *paid*, mentioning the dates of payment and the names of parties to whom paid, and that he did so under his signature in relation to the warrants in question. The warrants were issued in 1871, and by this time must be considered as having been paid. It is not proved, or even alleged, that any one has, since the time of their issuance, presented them for payment. They would, then, be prescribed.

The balance to be accounted for by the defendant would be five hundred and sixty-nine dollars ($569). He attempted to prove how it had been applied. Part of the evidence offered by him was admitted, and the remaining part was refused. Bills of exceptions were reserved both to the admission and to the rejection of the testimony so offered.

We think that the testimony received should have been rejected, and that the evidence refused was properly declined.

Under section 23 of act 6 of 1870, *extra session*, the president of the board is alone authorized to draw drafts on the treasurer of the parish for money apportioned to the district, to sign all orders on the district treasury, specifying in the order the fund on which they are drawn and the use for which the money is assigned, and under paragraph 10 of the same section, it is provided that the treasurer " shall pay out the same on the order of the president," and " shall pay no order which does not specify the fund on which it is drawn, and the specific use to which it is applied."

The money in the hands of the defendant, as treasurer, was a public fund, which was by law appropriated for specific purposes and was to be applied in a specific manner after compliance with specific rules. The law contains provisions prohibitory of a different distribution. The treasurer was a salaried public functionary, clothed with specified powers, to be exercised under special rules. He had no right to use the funds in his hands in a manner different from that prescribed by law. A special agent cannot go beyond the limits of his procuration. Whatever he does exceeding his power, is null and void, with regard to the principal, unless ratified by the latter. R. C. C. 3010. If it be true that the amount remaining to be accounted for was applied to the payment of debts due by the School Board, the defendant may have an ordinary action against them for a re-imbursement, but such a claim cannot be asserted or established in the present case, *first*, because the treasurer has averred that he had applied the funds in *strict* conformity with law, and, *next*, because he cannot be permitted to offer testimony contradictory of his pleadings. Even had he made a distinct averment, which he

has not, justifying the admission of the evidence offered, the evidence should have been, as it was, refused, inasmuch as its object would have been to prove, as a justification, a distribution of public moneys in direct contravention of a prohibitory law. Such a rule is to be observed and enforced particularly in cases like the present one, in which a late public functionary, sought to be made to pay back moneys in his hands, or to account for the same, seeks to show an application of the same in a manner expressly forbidden. Depositaries of public moneys, entrusted with them for specific purposes, and which are to be drawn against in particular forms, and not to be distributed or applied differently, cannot, in exoneration of their liability to account, set up a distribution or application, authorized by themselves, even where the amount did actually extinguish a valid obligation of the depositor. The Board, and not the treasurer, was to determine what application of the funds should be made. A different rule would throw public affairs in a most lamentable state of confusion, ending, possibly, in the great injury of all parties concerned.

We do not consider that the defendant, Millspaugh, has justified the disbursement of the sum of $569, which he was bound to account for as the balance in his hands after payment of the $860 warrants drawn and paid as already stated. His surety, Gantt, is liable with him *in solido* for the payment to the plaintiff of said sum.

The plaintiff has prayed for judgment against Millspaugh with mortgage, and judgment was accordingly rendered. The bond furnished by him was duly recorded, and operates as a mortgage on his property. The plaintiff and appellee has moved for an amendment of the judgment, and for allowance of the whole amount claimed in his petition, and for damages. The judgment of the lower court was for five hundred and forty-eight dollars and thirty-one cents, the judge having allowed small items, amounting to the difference between that sum and five hundred and sixty-nine dollars. The judgment should be increased by this difference. We think it is due to the defendant, Millspaugh, to reserve to him what right of action he may have, if any, to claim in a different proceeding from the plaintiffs this sum of five hundred and sixty-nine dollars. We do not think that damages should be allowed for further appeal.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be amended by allowing plaintiff to recover from the defendants the sum of five hundred and sixty-nine dollars *in solido*, and that so amended, it be affirmed, with the reservation aforesaid in favor of Millspaugh, and that appellants pay costs in both suits.